*958 OPINION.
Van Fossan :
The sole question presented in these proceedings is whether or not good will, in the amount of $50,000 acquired by the petitioner at or about the time of organization, may be included in invested capital. The respondent, in determining the deficiencies, excluded good will from invested capital upon the ground that it was acquired for stock and had no value. The substance of petitioner’s contentions is that this good will was purchased for cash, or the equivalent of cash, and that its value, when acquired, is determined by the amount .of the consideration paid therefor.
The respondent’s determination that the good will was acquired for stock is predicated entirely upon the offer of M. Werk, of October 18, 1888, to transfer and convey good will and certain other assets, to the petitioner, ánd “ to accept in payment of said property a full discharge of the claims of your company against Eugenie M. Werk, Casimir Werk, Michael Werk, Albert Schwartz and myself, and the issue to them respectively of proper certificates for their subscriptions to the capital stock of said company, on condition, however, that the company carry $250,000 of the value of the property so hereby offered as surplus capital and credit the said stock subscribers therewith in proportion to the subscriptions by them respectively made.” The claims to which reference was made in this offer related to any obligations of the persons mentioned on account of their stock subscriptions and contributions agreed to be made to surplus. What was sought to be accomplished by the provisions of the offer relating *959 to the consideration to be paid for the assets, and the acceptance thereof by petitioner’s directors, is not entirely clear. Reading them literally, it would appear the intent was that M. Werk should contribute the entire capital and surplus, while the shai’es of stock were to be issued to all subscribers thereto in proportion to their subscriptions, the subscribers in turn being relieved from any and all obligations on account of their stock subscriptions and the contributions they agreed to make to surplus. If that be the correct interpretation and reflects what was actually done, then there could be no question that the good will was paid in for stock. However, this interpretation gives to the transaction the characteristics of a gift on the part of M. Werk to the other subscribers and the evidence is ample that there was no intent of a gift of that sort. Neither does such an interpretation harmonize with what actually took place. The charges made against the several accounts of the subscribers, on account of their stock subscriptions and the contributions they agreed to make to surplus, were never modified in any respect; and of the liability of the predecessor partnership to each subscriber which the petitioner assumed, there was ultimately paid by the petitioner only the amount thereof, less the charges for stock subscriptions and surplus contributions. Moreover, when the assets included in the offer of M. Werk were recorded on petitioner’s books of account, his account was credited with the agreed value thereof, $490,709.29, including $50,000 for good will, and this credit was actually paid to him in cash, or its equivalent, on or before February 1, 1890.
The transfer to petitioner of the partnership assets on August 1, 1888, was made for the purpose of liquidating the accounts of the members of the partnership. The transfer by Werk of good will and other assets, pursuant to his offer of October 18, 1888, was an entirely distinct and separate transaction, and in no way connected with the earlier conveyance b)'' the partnership. The evidence clearly establishes that ownership of the assets included in the offer referred to vested absohitely in M. Werk; and for those assets Werk was paid cash, or its equivalent. Therefore, the respondent erred in determining that the good will was acquired for stock. We agree with the petitioner that the amount of cash, or its equivalent, paid to M. Werk for the good will, to wit, $50,000, fixes the value thereof at the date of acquisition. The respondent concedes in his brief that, if the record sustains petitioner’s contention, “ an invested capital of $500,000 should be allowed instead of $450,000 actually allowed.” Invested capital, as determined by the respondent, should be increased $50,000. The sum of $9,290.71 claimed by petitioner as paid-in surplus will be taken care of by the allowance of an invested capital of $500,000.

Judgment will be entered wider Bule 50.